**CITIZENS FOR JOHN W. MOORE PARTY, John W. Moore and Willie Anderson, Plaintiffs,**

v.

**BOARD OF ELECTION COMMISSIONERS OF the CITY OF CHICAGO, et al., Defendants.**

**No. 82 C 5901.**

United States District Court, N.D. Illinois, E.D.

Nov. 28, 1984.

Susan Bandes, Harvey Grossman, Chicago, Ill., for plaintiffs.

Aldus S. Mitchell, Michael Levinson, Charles R. Bernardini, Donald F. Hemmesch, Jr., Boodell, Sears, Sugrue, Giambolvo & Crowley, James M. Scanlon, State Bd. of Elections, Chicago, Ill., for defendants.

## MEMORANDUM OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

WILLIAM T. HART, District Judge.

This is a civil rights action for declaratory and injunctive relief, brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1651, 2201–2202. Plaintiffs challenge the constitutionality of the actions, on August 24, 1982, of the defendant Board of Election Commissioners of the City of Chicago (the "Board") and its members in holding insufficient the nominating petitions of plaintiff John W. Moore Party and plaintiff candidate John W. Moore. Plaintiffs further challenge the constitutionality of § 10–4 of the Illinois Election Code. Ill.Rev.Stat. 1981, ch. 46, § 10–4.[1] Based on that provision, the Board invalidated some of plaintiffs' new political party nominating petitions for the office of Representative in the Illinois General Assembly at the November 2, 1982 general election, as they were circulated by a person who previously circulated established political party nominating peti-

---

1. The relevant portion of § 10–4 states:

    Provided, further, that no person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election.

tions for the office of Illinois State Senator at the March 16, 1982 primary election.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4) in that plaintiffs seek to redress the deprivation, under color of state law, of rights secured to them by the Constitution of the United States, including the First and Fourteenth Amendments. The fact that the election has passed does not moot the issues presented in the complaint. Declaratory relief may still be granted. *Storer v. Brown,* 415 U.S. 724, 737, n. 8, 94 S.Ct. 1274, 1283, n. 8, 39 L.Ed.2d 714 (1974); *Rosario v. Rockefeller,* 410 U.S. 752, 756, n. 5, 93 S.Ct. 1245, 1249, n. 5, 36 L.Ed.2d 1 (1973).

Plaintiffs filed this action on September 24, 1982. On October 2, 1982 plaintiffs appeared before the Court in support of their motion for a temporary restraining order and preliminary injunction declaring unconstitutional § 10–4 of the Illinois Election Code and requiring defendants to validate nominating petitions for plaintiff Moore as a candidate for the office of representative in the General Assembly and to cause his name to be printed on the November 2, 1982 ballot. After considering the motion and materials filed by the parties and hearing oral argument, the Court concluded that plaintiffs had failed to seek equitable relief in a timely fashion in the context of an election case and had failed to show a reasonable likelihood of success on the merits. Accordingly, injunctive relief was denied.

William Anderson joined this action individually as a plaintiff and on behalf of all others similarly situated who desired to vote for plaintiff Moore. However, no motion to certify a class was made and this action proceeded to trial as an individual action.

Plaintiffs waived their claims against Stanley Kusper and Taylor Pouncey and their motion to dismiss the action as to them is hereby granted.

## FINDINGS OF FACT

On September 4, 1984 the pretrial order was approved. The pretrial order included a stipulation of uncontested facts which the Court adopts as findings of fact as follows:

1. Plaintiff Citizens for John W. Moore Party ("Moore Party") is an unincorporated association with its principal office in Chicago, Illinois.

2. The Moore Party sought to form a new political party in the Thirty-First Representative District and to nominate John W. Moore ("Moore"), its party chairman, as its candidate for Representative in the Illinois General Assembly for the Thirty-First Representative District in the November 2, 1982 General Election.

3. Plaintiff Moore is a United States citizen over twenty-one years of age who resided in the Thirty-First Representative District for over two years by the time of the November 2, 1982 General Election.

4. Plaintiff Moore sought to run as a candidate of the Moore Party for the office of Representative in the General Assembly for the Thirty-First Representative District in the November 2, 1982 General Election.

5. Plaintiff Willie Anderson ("Anderson") is a United States citizen over eighteen years of age who is registered to vote in the Thirty-First Representative District.

6. Plaintiff Anderson desired to vote for Moore, the candidate of the Moore Party, for the office of Representative in the Illinois General Assembly for the Thirty-First Representative District in the November 2, 1982 General Election.

7. Defendants Michael E. Lavelle ("Lavelle"); James R. Nolan ("Nolan") and Corneal A. Davis ("Davis") are members of and comprise the Board of Election Commissioners for the City of Chicago ("Chicago Board"). Defendant Lavelle is chairman of said Chicago Board. Said defendants were responsible under the Illinois Election Code (Ill.Rev.Stat.1981, ch. 46, § 1–1 *et seq.*) for determining the validity of nominating petitions of new political parties and of persons seeking to become candidates for election to the office of Repre-

sentative in the General Assembly for the Thirty-First Representative District for the November 2, 1982 General Election and for printing the names of all candidates running for office in the November 2, 1982 General Election from a territory either partially or wholly within the City of Chicago. In addition, said defendants conducted and declared the results of said election.

8. Defendants J. Phil Gilbert; Michael J. Hamblet; John W. Countryman; Richard A. Cowen; Carolyn R. Eyre; Joshua Johnson; John L. Lanigan and Teresa M. Petrone are members of and comprise the Illinois State Board of Elections. The Illinois State Board of Elections was required by law to certify to the County Clerk, the names of the candidates for election with respect to the general election held in November of 1982. Because the Board of Election Commissioners for the City of Chicago determined that the plaintiff Citizens for John W. Moore Party and its candidate John W. Moore did not have sufficient signatures on its petition to qualify for the 1982 election for State Representative for the Thirty-First Representative District, the Illinois State Board of Elections did not so certify the candidacy of John W. Moore for the office of Representative in the General Assembly.

9. Taylor Pouncey ("Pouncey") is the person who objected to the validity of plaintiffs' nominating petitions and thus initiated the proceedings before the defendant Board and the enforcement of the statute against which plaintiffs herein complain. Pouncey was the nominee of the Democratic Party for election to the office that Moore sought.

10. Plaintiffs Moore Party and Moore timely filed nominating petitions purporting to contain 3,829 valid signatures.

11. Pouncey timely filed objections to said nominating petitions. Among the deficiencies in the nominating petitions alleged by Pouncey was the following:

> John W. Moore circulated Petitions for Nomination for the Democratic Party in December, 1981 for candidates to be elected at the November 2, 1982 general

election and circulated sheets of the Petition to form Citizens for John W. Moore in violation of Section 10–4, the Illinois Election Code. More particularly, John W. Moore circulated sheets numbered (numbers specified) in the Petition improperly and the 975 signatures on those Petition Sheets are invalid because of an improper circulator.

12. At the hearing before the defendant Chicago Board, plaintiffs Moore Party and Moore, *inter alia,* moved to strike the objections to the petition sheets circulated by plaintiff Moore on numerous factual and constitutional grounds.

13. At the hearing before the defendant Chicago Board, uncontroverted evidence was introduced that plaintiff Moore had circulated petitions seeking the Democratic Party nomination of himself for the office of State Senator for the Sixteenth Legislative District at the March 16, 1982 Primary Election. Further uncontroverted evidence was introduced that, in or around April of 1982, plaintiff Moore circulated new political party petition sheets seeking to place the Citizens for John W. Moore Party on the November 2, 1982 general election ballot for the office of Representative in the General Assembly for the Thirty-First Representative District. Plaintiff John W. Moore was said party's candidate for Representative.

14. Defendant Chicago Board denied plaintiffs' motions to strike the objections to the petitions circulated by Moore and, on August 24, 1982, issued a written opinion finding that the Moore party's nominating petition was invalid in that it contained an insufficient number of signatures to qualify the plaintiff Moore Party and plaintiff Moore for access to the ballot as a candidate for the office of Representative in the General Assembly for the Thirty-First Representative District for the November 2, 1982 general election.

15. As a result of the defendant Chicago Board's actions, the plaintiff Moore and the plaintiff Moore Party did not appear on the ballot for the November 2, 1982 general

election. But for the defendant Chicago Board's ruling invalidating petition sheets circulated by the candidate himself (containing 975 otherwise valid signatures), the nominating petitions would have contained the 1500 signatures required to place the names of the Moore Party and the candidate Moore on the ballot.

16. In the cases of "Big James" Phipps, Case No. 80 EB 3 and James "Skip" Burrell, Case No. 80 EB 4, both decided on December 27, 1979, the Chicago Board, in sustaining the candidate's Motions to Strike Paragraphs 5 and 6 of Objector's Petitions, cited the following reasons for its decision:

> Paragraph [5, 6] of the Objector's Petition relies on the prohibition in Section 10–4 of the Election Code against the circulator of an independent candidate's petition from also circulating a petition for a candidate for a political party to be voted upon at the next Primary or General Election. The prohibitions contained in Section 10–4 are susceptible to varying interpretations. Moreover, there is no evidence in the record as to when in point of time the petitions (independent as well as political party) were circulated. Accordingly, to strike the signatures on petition sheets in question would violate the judicial standard of the electoral review enunciated in *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir.1971).

17. In *Marcus v. Nimrod*, No. 82 CO EB 3, before the County Electoral Board, that Board held:

> Paragraph Eight of Objector's Petition alleges that certain sheets should not be counted in that the circulators of some of the sheets had previously circulated petition sheets for candidates of other political parties. This Electoral Board finds that there is no statutory or case law prohibition against one circulating a nominating petition for a candidate for the primary election and then circulating a petition to form a new political party and to nominate another candidate for a different office for a different election, to wit, the General Election to be held on November 2, 1982, and that such finding is consistent with previous holdings of the City of Chicago Municipal Officers Electoral Board.
>
> Therefore, Paragraph Eight is hereby stricken and overruled.

18. A political party which at the last election in any legislative district polled more than five per cent of the entire vote cast within such district for the election of officers to serve the district is an "established political party" within the meaning of Article 10 as to such district. Section 8–2 defines "political party" as:

> a political party which, at the next preceding election for governor, polled at least five per cent of the entire vote cast in the State.

(§ 10–2).

19. Candidates of established political parties for the office of Representative in the General Assembly are nominated at primary elections. (§ 8–1 *et seq.*).

20. Persons seeking established party nominations for state legislative office qualify for the primary election ballot by, *inter alia*, filing nominating petitions 99–92 days prior to the Primary Election. (§ 8–9).

21. Petitions supporting the candidacy of persons seeking established political party nominations must be circulated and attested to by a registered voter of the political division in which the candidate seeks office. (§ 7–10).

22. Independent (non-party) candidates and candidates of "new" (non-established) political parties for the office of Representative in the General Assembly are nominated by petition only and stand for election at the General Election. (§§ 10–1 *et seq.*).

23. Independent (non-party) candidates for the office of Representative in the General Assembly present their nominating petitions at the same time as established party candidates for the same office. (§ 10–3).

24. Petitions to form a new political party and to nominate candidates for the office of Representative in the General As-

sembly of such a party file their nominating petitions 99–92 days prior to the General Election. (§ 10–6).

25. Petitions supporting the candidacy of independent (non-party) and new (non-established) political party candidates for the office of Representative in the General Assembly must be circulated and attested to by a registered voter of the political division in which the candidate seeks office. (§ 10–4).

26. Certificates of nomination and nomination papers, being filed as required by the Illinois Election Code and being in apparent conformity with the provisions of the Code, are deemed to be valid unless an objection thereto is filed. (§ 10–8).

27. Nothing in Article 7 of the Illinois Election Code prohibits the same person from circulating nominating petitions for candidates of more than one established political party. (§ 7 *et seq.*).

28. Section 10–4 prohibits a new party candidate from circulating petitions for himself in the general election if he:

a. circulated petitions for himself as an established party candidate for the same office in the primary; or

b. circulated petitions for himself as an established party candidate for a different office in the primary; or

c. circulated petitions for an established party or independent candidate to be voted upon at the primary or general election.

29. Section 10–4 prohibits a new party candidate who lost as an established political party candidate in the primary for the same office or a different political office from using as circulators for the general election supporters who:

a. circulated petitions for him in the primary; or

b. circulated petitions for another established party independent, or new party candidate to be voted upon at the next primary or general election.

30. Section 10–4 prohibits supporters of a new party candidate from circulating new party petitions if they:

a. circulated petitions for the same person as an established party candidate for the same office or a different office in the primary; or

b. circulated petitions for another established party, independent or new party candidate for the same office or a different office to be voted upon at the next primary or general election.

31. "Running for Office: A Candidate's Guide," prepared by the defendant State Board of Elections for the 1980 elections, states on page 15:

Article 10 of the Illinois Election Code explains in detail how to seek office in Illinois as an Independent;

and states on page 17:

Article 10 of the Illinois Election Code deals with new political parties—how they are formed and how their candidates get on the general election ballot.

32. The language of § 10–4 of the Illinois Election Code, on its face, does not prohibit persons from circulating or certifying petitions for more than one independent candidate to be voted upon at the next general election.

33. The State Board caused to be prepared, printed and published a document entitled *Running For Office, A Candidate's Guide (1980)* which states, on page 3 that:

Petition Circulator

\*       \*       \*       \*       \*       \*

(c) may not circulate for more than one party; nor for more than one party and one independent candidate in same election.

34. The State Board caused to be prepared, printed and published a document entitled *A Candidate's Guide for 1982 Elections* which contains a section (pages 3–8) devoted to "Preparing and Filing Nomination Papers" and a statement therein which reads in part:

All candidates for public office in Illinois—whether they are established party candidates, candidates of new parties or

independents—must carefully follow the law when filing their nominating papers.

\* \* \* \* \* \*

The following is a step-by-step outline of the proper way for a candidate to meet these filing requirements.

II. Petition Circulator

\* \* \* \* \* \*

b. May not circulate for more than one party (Chap. 46, Art. 10–4); may not circulate more than one independent's petition for each office or elected (Chap. 46, Art. 10–4); may not circulate for an independent candidate or candidates in addition to a political party candidate in the same election (Chap. 46, Art. 10–4)."

35. The State Board caused to be prepared, printed and published a document entitled *A Candidate's Guide for 1983 Elections* which contains a statement at page 6:

"2. Petition Circulator

\* \* \* \* \* \*

b. A petition circulator may not circulate for more than one for one party and for one independent candidate in the same election; and may not circulate for more than one independent candidate for each office. (Chapter 46, Secs. 10–3 and 10–4)."

36. Section 10–2 of The Election Code defines the term "political party," as used in Article 10, to mean any " 'established political party' and also any political group which undertakes to form an established political party in the manner provided for in Article 10."

In addition, the Court makes the following findings of fact based on the evidence submitted.

37. Both the Sixteenth Legislative District and the Thirty-first Representative District are in the Englewood Community Area of Chicago, Illinois.

38. Plaintiffs were required to obtain 1,500 signatures to nominate Moore as a new party candidate for the 31st Repre-

sentative District. Plaintiffs actually submitted 3,829 signatures collected by Moore and six circulators. Moore alone obtained 975 signatures out of the 3,289 signatures submitted. The Board invalidated those signatures obtained by Moore because of the circulator restriction in § 10–4. The Board also invalidated an additional 1,493 signatures for reasons unrelated to § 10–4. Consequently, the Board accepted as valid only 1,361 of the 3,829 signatures submitted to nominate Moore.

39. Moore was unaware of the circulator provision in § 10–4.

40. Plaintiffs failed to offer sufficient evidence to establish that an additional 139 valid signatures could not have been obtained because of a limited pool of circulators.

## OPINION AND CONCLUSIONS OF LAW

Ballot access restrictions on voters and candidates implicate fundamental constitutional rights. *Anderson v. Celebrezzi,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Dunn v. Blumstein,* 405 U.S. 330, 336–37, 92 S.Ct. 995, 999–1000, 31 L.Ed.2d 274 (1972); *Wesberry v. Sanders,* 376 U.S. 1, 17–18, 84 S.Ct. 526, 534–35, 11 L.Ed.2d 481 (1964). Restrictions on access to the ballot burden the right of individuals to associate for the advancement of political beliefs and the right of voters to cast their votes effectively. In *Anderson* the Supreme Court outlined the analytical process a court must pursue to resolve the merits of such constitutional challenges:

It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiffs seek to vindicate. It then must identify and evaluate the precise interests put forward by the state as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plain-

tiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547.

Plaintiffs make two basic arguments. First, they contend that the challenged provision of § 10–4 violates the Equal Protection Clause of the Fourteenth Amendment because it applies only to new political parties and independent candidates. Second, even if § 10–4 does apply to established political parties as well as to new political parties and independent candidates, plaintiffs contend that the defendants have not shown that the state has a compelling interest which justifies the burdens imposed by § 10–4 on the First and Fourteenth Amendment rights of new political parties, candidates and voters.

## I. The Equal Protection Claims

[2] Plaintiffs' argument that § 10–4 violates the Equal Protection Clause rests on their interpretation of the provision as applicable only to new parties and independent candidates. This construction, however, is not supported by an examination of Article 10. Article 10 is broader than plaintiffs claim and is interrelated to Articles 7 and 8. Article 10 provides for the manner in which established political parties are created. The provisions of this Article also govern the filing and hearing of objections to nomination papers filed pursuant to Articles 7 and 8 which apply to established political parties, as well as those filed pursuant to Article 10.

Moreover, § 10–2 provides that the term "political party," as used in Article 10, shall include "any established political party," defined as any party receiving over 5% of the vote cast for any elective office. Thus § 10–4, in prohibiting a person from circulating nominating petitions for candidates of more than one "political party" or for an independent candidate in addition to a "political party" was expressly and specifically intended to apply to both established and new political parties.

The State Board of Elections has published several documents and pamphlets which are used as candidates' guides. It has consistently interpreted the circulator restriction provision in § 10–4 to apply to all political parties and has never made the distinction between established political parties and new political parties and independents suggested by the plaintiffs.

The fact that the Board of Election Commissioners of the City of Chicago may have decided two cases contrary to the position taken by the State Board does not give rise to a situation found to exist in *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir.1970) (unannounced change in election board policy violates due process). There is some distinction between this case and the *Phipps* and *Burrell* cases,[2] but of greater importance is the fact that the statutory language is clear and the State Board has consistently advised candidates that the circulator provision applies to all circulators. Accordingly, there is no invidious discrimination between established political parties and new parties or independent candidates. Plaintiffs' Equal Protection claim is rejected.

## II. The First and Fourteenth Amendment Claims

Plaintiff Moore testified that during the summer of 1981 he decided to become a Democratic candidate in the March, 1982 primary election for the office of State Senator for the Sixteenth Legislative District. Moore had voted in past Democratic primaries and had been a candidate in the 1980 Democratic primary for representative in the General Assembly. Moore and his supporters circulated petitions for the office of State Senator. However, before the primary he withdrew his name for the nomination.

Moore and his supporters then decided to form a new political party and circulate

---

**2.** *In re Phipps,* 80 E.B. 3 (1984); *In re Burrell,* 80 E.B. 1979). According to the Board's decisions, the circulator provision was not enforced be-cause the Board could not tell which petitions were obtained first.

petitions for Moore's candidacy in the general election for the office of Representative in the General Assembly for the Thirty-first Legislative District. Both districts are in the Englewood community. Because Moore and some of his supporters circulated petitions on his behalf, some of the signatures were invalidated. Moore was required to submit 1,500 signatures. He submitted 3,829 signatures. However, due to the circulator provision and other unrelated defects only 1,361 signatures were valid.

Although Moore testified, presumably in support of his free speech and association claims, that his interest lay outside of the Democratic party, there is a question as to whether his interests were outside of that party when he chose to abandon the party and run as a member of a new party. In any event, he was not prohibited by the Election Code from running as a new party candidate.

■ The state may regulate the conduct of each political party on the ballot and may insist that intra-party competition be settled before the general election. *American Party of Texas v. White*, 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974); *Bendinger v. Ogilvie*, 335 F.Supp. 572 (N.D.Ill.1971). The circulator provision is a rational method of regulating such contests in order to prevent abuse, party splintering, factionalism, and voter confusion.

The circulator provision is designed to provide stability. Voter confusion can easily occur (here in the same area) if circulators are allowed to switch sides in the same campaign. Abuse or at least confusion can occur if professional circulators serve competing interests espousing divergent views. Just as voters may be limited to nominating one candidate or supporting one party in a primary election, and candidates may be limited to running under the banner of one party, so too are circulators, whose importance to a political party or campaign is significant, limited to campaigning on behalf of one political party or independent candidate in the same election. The circu-

lator restriction provision is a permissible integral part of an overall legislative scheme to regulate elections.

The burden to First and Fourteenth Amendment rights involved is the task of obtaining petition circulators who have not already circulated petitions for another party in the same election. Moore stated this would have been difficult. Moore also stated that he was unaware of the requirement. The question is whether the requirement of obtaining different circulators would have been unduly burdensome. However, there is insufficient evidence to support a finding that obtaining alternative circulators would have been too great a burden. Moore did not attempt to find other circulators. The petitions submitted contained twice the number of signatures required. Plaintiffs submitted 1,361 valid signatures and needed only 139 additional signatures to have Moore's name placed on the ballot. This evidence does not prove that there was a shortage of circulators or that the burden imposed outweighs the statutory objectives and benefits. *Cf. Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).

The plaintiffs' First Amendment associational rights were not unduly burdened. The statute did not prevent Moore's candidacy. Therefore the circulator restriction does not mandate strict construction although it would survive such a test. The statute requires that circulators make a choice of political parties and remain with that party or independent candidate throughout an election. This is not an unconstitutional burden.

Accordingly, this Court finds the issues in favor of the defendants and against the plaintiffs and dismisses this case on the merits.