THOMAS R. SCHOBER, Plaintiff-Appellee, v. JAMES S. YOUNG, Defendant-Appellant (The State Board of Elections *et al.*, Defendants).

Fourth District   No. 4—00—0882

Opinion filed June 21, 2001.

Andrew B. Spiegel, of Wheaton, for appellant.

W. Scott Nelson, of Springfield, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On expedited judicial review under section 10—10.1 of the Election Code (10 ILCS 5/10—10.1 (West 1998)), the circuit court of Sangamon County reversed a decision of the Illinois State Board of Elections (Election Board) sitting as the State Officers Electoral Board. Plaintiff,

Thomas R. Schober (Schober), initiated the proceeding before the Election Board by objecting to the nominating petitions of defendant James S. Young (Young). The Election Board overruled the objections, and Schober sought judicial review in the circuit court, naming as defendants Young, the Election Board, and the members of the Election Board, chairman William McGuffage, Wanda Rednour, Elaine Roupas, Kay D. Holloway, David E. Murray, and Phillip O'Connor. Following the circuit court's reversal of the Election Board's decision, Young appealed. The issues on appeal are whether (1) the failure of the circuit court to find that the Election Board's decision is against the manifest weight of the evidence requires reversal of the circuit court's order, (2) Young violated the dual-circulation prohibition of section 10—4 of the Election Code (10 ILCS 5/10—4 (West Supp. 1999)), and (3) the application of section 10—4 to the facts of this case is unconstitutional. We affirm.

We first note that notice of appeal was filed with the circuit clerk of Sangamon County on October 6, 2000. In response to our rule to show cause, pursuant to Supreme Court Rule 312 (155 Ill. 2d R. 312), for failure to file a docketing statement, the rule was discharged when the docketing statement was filed November 7, 2000, which was election day. We further note that the docketing statement did not request an expedited schedule and that appellant's brief was not filed until February 28, 2001, after a rule to show cause was issued by this court.

■ Review of an Election Board decision, where the decision has the vote of five members of the Election Board, is determined according to the manifest-weight standard. See *King v. Justice Party*, 284 Ill. App. 3d 886, 888, 672 N.E.2d 900, 902 (1996). In the instant case, the members of the Election Board voted 4 to 2 in support of the objection, but because there were not five votes, the objection was overruled. We need not decide whether the manifest-weight standard applies in this case.

■ Where questions of law arise, a *de novo* standard applies, and the determination of the constitutionality of a statute is a question of law that this court considers *de novo*. *Miller v. Rosenberg*, 196 Ill. 2d 50, 57 (2001). As to the applicability of the statute to the facts of this case, the facts are not in dispute, divergent inferences could not be drawn from the undisputed facts, and there is a question of law to which this court applies a *de novo* standard. See *Stephens v. Education Officers Electoral Board, Community College District No. 504, Cook County*, 236 Ill. App. 3d 159, 161, 603 N.E.2d 642, 644 (1992). In this case, whether a violation of the statute occurred depends on the construction placed on the statute. Statutory construction also raises a question of law. *Country Mutual Insurance Co. v. Universal Under-*

*writers Insurance Co.*, 316 Ill. App. 3d 161, 164, 735 N.E.2d 1032, 1035 (2000). While deference is generally accorded the construction placed on a statute by an agency given the authority to administer that statute, the courts are not bound by an agency's erroneous construction of the statute. *Taylor v. Cook County Sheriff's Merit Board*, 316 Ill. App. 3d 574, 579, 736 N.E.2d 673, 677 (2000) (also noting that the legal effect of undisputed facts is a question of law determined *de novo*). The fact that the circuit court did not determine that the Election Board's findings were against the manifest weight of the evidence is not a basis for reversing the circuit court's decision in this case.

The facts are undisputed. Young served as a circulator of one nominating petition for Cal Skinner, Jr., to be a candidate for the Republican party for nomination to the office of representative in the General Assembly for the 64th representative district at the general primary election held on March 21, 2000. After Skinner lost the primary election, Young sought to become a candidate for the same office for the Libertarian party in the general election on November 7, 2000. The Libertarian party is not an established political party within the 64th representative district. Young served as circulator for 294 of the 296 nominating petitions seeking to nominate himself as the Libertarian party candidate.

■ Section 10—4 of the Election Code sets forth the form for a nominating petition. Section 10—4 provides, in relevant part, as follows:

"At the bottom of each sheet of such petition shall be added a statement, signed by a registered voter of the political division, who has been a registered voter at all times he or she circulated the petition, for which the candidate or candidates shall be nominated; stating the street address or rural route number of the voter, as the case may be, as well as the voter's county, and city, village or town, and state certifying that the signatures on that sheet of the petition were signed in his presence; certifying that the signatures are genuine; and either (1) indicating the dates on which that sheet was circulated, or (2) indicating the first and last dates on which the sheet was circulated, or (3) certifying that none of the signatures on the sheet were signed more than 90 days preceding the last day for the filing of the petition ***; and certifying that to the best of his knowledge and belief the persons so signing were at the time of signing the petition duly registered voters under Articles 4, 5 or 6 of the Code of the political subdivision or district for which the candidate or candidates shall be nominated, and certifying that their respective residences are correctly stated therein. *** No petition sheet shall be circulated more than 90 days preceding the last day provided in Section 10—6 for the filing

of such petition \*\*\*. \*\*\* *Provided, further, that no person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election,* or for such candidates and parties with respect to the same political subdivision at the next consolidated election." (Emphasis added.) 10 ILCS 5/10—4 (West Supp. 1999).

On July 3, 2000, Schober filed an objection to Young's nominating petitions, claiming that 294 petitions showing circulation by Young were invalid because they were obtained by a dual circulator. Although the vote was 4 to 2 in favor of sustaining the objection, at least five votes are required for Election Board action; hence, the objection was overruled. 10 ILCS 5/1A—7 (West 1998). Schober then sought judicial review in the circuit court. Young's attempt to have the issues raised here on judicial review considered in federal court was met with dismissal for want of subject-matter jurisdiction. *Young v. Illinois State Board of Elections*, 116 F. Supp. 2d 977, 984 (N.D. Ill. 2000), *aff'd*, 234 F.3d 1275 (7th Cir. 2000). We recognize that federal court decisions have found section 10—4 unconstitutional, but only to the extent that it required petition circulators to be registered voters. *Young*, 116 F. Supp. 2d at 985-87; *Tobin For Governor v. Illinois State Board of Elections*, 105 F. Supp. 2d 882, 887-88 (N.D. Ill. 2000). Contrary to Young's contention, we do not find this a basis for invalidating the entire statute. See *People v. Sanders*, 182 Ill. 2d 524, 534, 696 N.E.2d 1144, 1149 (1998) (the offending portion may be excised and the remainder preserved provided the remainder is complete in and of itself and capable of being executed wholly independently of the severed portion and the legislature would have adopted it without the severed portion).

We also note that the federal courts have previously construed the dual-circulation prohibition and found it constitutional in a series of cases captioned *Citizens For John W. Moore Party v. Board of Election Commissioners*, 599 F. Supp. 662 (N.D. Ill. 1984) (*Moore I*), *aff'd in part & vacated in part*, 794 F.2d 1254 (7th Cir. 1986) (*Moore III*); 781 F.2d 581 (7th Cir. 1986) (*Moore II*); 665 F. Supp. 1334 (N.D. Ill. 1987) (*Moore IV*), *aff'd*, 845 F.2d 144 (7th Cir. 1988) (*Moore V*). The *Moore* cases arose because the Board of Election Commissioners of the City of Chicago sustained objections to nominating petitions Moore and his supporters circulated on behalf of his candidacy in the 1982 general election for the office of representative in the General Assembly for the 31st legislative district after he and those supporters circulated petitions for his candidacy in the 1982 Democratic primary for the office of state senator, secured a place on the ballot in the primary, and

then withdrew from the primary. *Moore I*, 599 F. Supp. at 664-66. The federal District Court for the Northern District of Illinois rejected Moore's challenge to the Election Board's interpretation of section 10—4 based on the first and fourteenth amendments of the United States Constitution (U.S. Const., amends. I, XIV). *Moore I*, 599 F. Supp. at 670. The Seventh Circuit affirmed the district court's general constitutional determinations but remanded for a determination of whether there was a material distinction between candidate-circulators and noncandidate-circulators for purposes of constitutional freedom-of-speech analysis as applied to candidates circulating petitions for their own candidacies. *Moore III*, 794 F.2d at 1263-64. On remand, the district court found no material distinction and again found that the dual-circulation prohibition was constitutional as it applied to Moore's circulation of petitions on his own behalf. *Moore IV*, 665 F. Supp. at 1340-42. The Seventh Circuit affirmed. *Moore V*, 845 F.2d at 148.

In this case, the circuit court applied the interpretation of section 10—4 urged by the Election Board in *Moore*. To the extent that Young challenges the constitutionality of the circuit court's interpretation of section 10—4 of the Election Code in this case, we follow *Moore* and determine that that interpretation is constitutional.

■ Generally, courts will not substitute their judgments for a reasonable interpretation of a statute adopted by an agency charged with its administration. *Church v. State of Illinois*, 164 Ill. 2d 153, 162, 646 N.E.2d 572, 577 (1995). However, the consistency and duration of the agency's interpretation are factors bearing on the deference to be given to the agency's interpretation. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 153-54, 447 N.E.2d 295, 300 (1983); *River Bend Community Unit School District No. 2 v. Human Rights Comm'n*, 232 Ill. App. 3d 838, 843, 597 N.E.2d 842, 845 (1992) (long-term adherence to a particular interpretation adds weight to the validity of the agency's construction).

Here, the Election Board adopted the factual findings of the hearing officer, but because the objector, Schober, obtained only four votes, the objection was overruled. The hearing officer found that Part IIE of the appendix to the Election Board rules of procedure provided in relevant part:

> "Upon showing proof by objector that candidate circulated for a candidate of another party during the circulation period, regardless of whether the petition of the other party was in fact filed, the entire petition sheet shall be invalidated."

The introductory paragraph to the appendix explains that it lists the most common grounds for objections to nominating petitions and the bases on which the Election Board will render decisions on objections

unless the evidence requires a different result. The example of a common objection in item IIE of the appendix to the Election Board's procedural rules does not appear to be an attempt by the Election Board to limit application of the section 10—4 prohibition against dual circulation to "circulation periods" as Young contends. Instead, it indicates only that, if this occurs, it is a valid basis for an objection.

The hearing officer also found that page 3 of the Election Board's candidate guide specified four circumstances in which dual circulation of petitions are prohibited. According to the candidate guide, a circulator is not allowed to circulate petitions for:

"1) more than one established party;

2) an independent candidate or candidates in addition to candidates for an established political party;

3) more than one new political party;

4) an independent candidate or candidates in addition to candidate for a new political party."

This language in the candidate guide merely reflects the language in the section 10—4 prohibition against dual circulation.

In this case, Young could be found to have violated the second prohibition in the candidate guide. Noting that section 10—4 of the Election Code does not refer to a "circulation period," the hearing officer concluded that the statute did not limit the prohibition only to the same circulation period and that the legislature intended the prohibition to apply "during all periods of circulation."

■ We are unpersuaded by Young's argument that the use of the word "or" between the words "primary" and "general" helps resolve the issue in this case. Indeed, that is what created the issue. The words "or" and "and" may be used as synonyms when that is necessary to effectuate the intent of the legislature. *John P. Moriarty, Inc. v. Murphy*, 387 Ill. 119, 129-30, 55 N.E.2d 281, 286 (1944); *Apex Oil Co. v. Henkhaus*, 118 Ill. App. 3d 273, 279, 454 N.E.2d 1032, 1037 (1983). In this case, we consider "or," as used between "primary" and "general" in the section 10—4 prohibition against dual circulation, was intended to be employed in the conjunctive.

■ Young urges this court to adopt an interpretation of section 10—4 limiting its dual-circulation prohibition to a circulation period defined as the circulation period prior to each election, irrespective of whether it is a primary or general election. He argues that the "election season" concept discussed in the *Moore* cases is not expressly embodied in the statute. However, under the construction placed on section 10—4 in *Moore*, as urged by the Election Board at that time, Young would be prohibited from dual circulation for a primary election and the later general election. The *Moore* analyses make it clear that

"election season" refers to the primary and the following general election.

In *McGuire v. Nogaj*, 146 Ill. App. 3d 280, 283, 496 N.E.2d 1037, 1040 (1986), the court interpreted the prohibition against dual circulation as not applying to the circulation of nominating petitions for multiple independent candidates for the same office as long as the circulator did not in addition circulate petitions for a political party. The *McGuire* court found that the prohibition in section 10—4 could "be read only to preclude dual circulation for (1) an independent candidate in addition to a political party." *McGuire*, 146 Ill. App. 3d at 283, 496 N.E.2d at 1040.

In *McGuire*, the case of *Briscoe v. Kusper*, 435 F.2d 1046, 1054-55 (7th Cir. 1970), was distinguished on the basis that the change in *Briscoe* was from the least-limiting application of the subject statute to a more restrictive application, whereas in *McGuire* the opposite occurred. *McGuire*, 146 Ill. App. 3d at 284-85, 496 N.E.2d at 1040-41. Further support for the circuit court's decision in this case are the Election Board rules of procedure and the candidate's guide language set forth in the hearing officer's findings.

The candidates, their supporters, and the voting public in general have an interest in consistent interpretations of the Election Code by the Election Board so that the election process is not thrown into chaos by arbitrary interpretations that vary from election to election or from candidate to candidate. The voting public and the candidates should know what to expect from the election process. Contributing to the possible chaos and various interpretations given Election Board decisions is the statutory mandate as to actions of the Election Board: "5 votes are necessary for any action of the Board to become effective." 10 ILCS 5/1A—7 (West 1998). In summary, we agree with the circuit court's ruling and its basis therefor.

Accordingly, we affirm the decision of the circuit court of Sangamon County reversing the Election Board's decision to overrule plaintiff's objection to defendant's nominating petitions.

Affirmed.

STEIGMANN, P.J., and MYERSCOUGH, J., concur.