DAVID CHESKO *et al.*, Plaintiffs-Appellees, v. THE CIVIL SERVICE COMMISSION, Defendant-Appellant.

Fourth District    No. 4—04—0476

Argued December 14, 2004.—Opinion filed January 27, 2005.

MYERSCOUGH, J., dissenting.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Jan E. Hughes (argued), Assistant Attorney General, of counsel), for appellant.

Bradley B. Wilson (argued), of Gates, Wise & Schlosser, P.C., of Springfield, for appellees.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Plaintiffs, employees of the Department of Children and Family Services (DCFS) whose classification is "Day Care Licensing Representative" (DCLR), filed a complaint for administrative review of a decision of the Illinois Civil Service Commission (Commission). The Commission approved class revisions advanced by the Illinois Department of Central Management Services (CMS) that did not include DCLRs. The DCLRs claimed their exclusion from the revision resulted in their

losing pay-scale parity and bumping and bidding rights with the classes that were revised. The DCLRs claimed the failure to include them in the revisions violated the Personnel Code (20 ILCS 415/1 through 25 (West 2002)), and the circuit court agreed, finding the amendments were arbitrary. The circuit court then certified three questions of law for appeal:

"1. Whether a decision of the Commission to approve a reclassification plan is subject to administrative review and, if so, what is the appropriate standard of review.

2. Whether an employee whose position is not included in a reclassification plan, but whose terms and conditions of employment are adversely affected by a reclassification plan, has standing to bring a claim for administrative review of the reclassification plan.

3. Whether an employee whose position is not included in a reclassification plan, but whose terms and conditions of employment are adversely affected by a reclassification plan, has a statutory right to appeal that plan to the Commission pursuant to section 10(5) of the Personnel Code (20 ILCS 415/10(5) (West 2002))."

We find as follows:

1. Approval of amendments to the classification plan is a quasi-legislative function of the Commission and is not subject to administrative review.

2. Whether plaintiffs have standing is irrelevant as administrative review is not appropriate.

3. Section 10(5) of the Personnel Code does not apply in this case; therefore, plaintiffs did not have a statutory right to appeal the plan to the commission. 20 ILCS 415/10(5) (West 2002).

We vacate the trial court's judgment.

## I. BACKGROUND

The state classification plan (plan) categorizes all state jobs subject to the jurisdiction of CMS according to "similarity of duties performed, responsibilities assigned, and conditions of employment so that the same schedule of pay may be equitably applied to all positions in the same class." 20 ILCS 415/8a(1) (West 2002). Subject to the approval of the Commission, the Director of CMS is responsible for the "preparation, maintenance, and revision" of the plan. 20 ILCS 415/8a(1) (West 2002). The Commission reviews the class specifications and approves those that meet the requirements of the Personnel Code and personnel rules (80 Ill. Adm. Code § 1.45 (Conway Greene CD-ROM March 2002)). The following principles must be met for the Commission to approve the specifications:

"(a) The specifications are descriptive of the work being done or which will be done;

(b) Identifiable differentials are set forth among classes which are sufficiently significant to permit the assignment of individual positions to the appropriate class;

(c) Reasonable career promotional appointments are provided;

(d) The specifications provide a reasonable and valid basis for selection screening by merit examinations;

(e) All requirements of the positions are consistent with classes similar in difficulty, complexity, and nature of work." 80 Ill. Adm. Code § 1.45 (Conway Greene CD-ROM March 2002).

If the Commission does not disapprove the revision within 30 days, "the Director shall allocate every such position to one of the classes in the plan." 20 ILCS 415/8a(1) (West 2002).

This case involves revisions to the plan submitted by the Director and approved by the Commission. The revisions abolished seven classes and replaced those classes with seven new classes at different pay grades (we will refer to the new classes in two groupings: CPS, referring to the Child Protective Series, and CWS, referring to the Child Welfare Series). The CPS series performs investigations of alleged child neglect, abuse, and sexual abuse, and the CWS series performs casework case-management functions in areas such as adoptions, licensing, court proceedings, and placement of children. The DCLRs are responsible for licensing day-care homes, group day homes, and day centers. The revisions did not include the DCLRs despite the fact that the DCLRs had always enjoyed wage parity with those prerevision classes. Because the DCLRs were not included in the revisions, they lost cross-bidding and bumping rights to positions in the new classes, did not receive pay increases that the new classes received, and may no longer move freely between the CPS and CWS classes.

CMS claimed the Director of DCFS requested a study concerning the prerevision CPS and CWS classes but did not request DCLRs be included in the study. As a result of the two-year study, CMS proposed revisions that would create the CPS and CWS classes. (The study is not included in the record and has not been supplied to plaintiffs.) Originally, the Commission was told no objections were raised to the reclassification, but at least 100 DCLRs, including plaintiffs, later objected. The DCLRs claimed their job functions are identical to the job functions of certain groups in the new classes and the fact that they were excluded from the reclassification would have a detrimental impact upon the terms and conditions of their employment.

Despite the DCLRs' objections, the Commission approved the amendments June 21, 2001, but it did order the Director of its staff to investigate the DCLRs' claims. A staff report was issued that discussed the fact that the historical wage parity among the classes was

destroyed because of the revisions and that certain CWS and CPS jobs were similar in duties, responsibilities, and conditions of employment with the DCLRs. Further, the report concluded that the Commission did not have the authority to correct the irregularities in the plan. The staff stated that it did not find any technical problems with the new classes and determined it was appropriate that the Commission approved the class specifications. The Commission then issued a final administrative order denying plaintiffs' request to correct irregularities in the revised plan.

Plaintiffs sought judicial review in the circuit court. The circuit court found the amendments violated the Personnel Code and were arbitrary "in that they do not conform with the mandates of the State Personnel Code[,] which requires classifications to be 'based upon similarity of duties performed, responsibilities assigned, and condition of employment so that the same schedule of pay may be equitably applied to all positions in the same class.' " The circuit court remanded the matter to the Commission "for the purpose of allowing it to determine how to best correct the irregularities in the [s]tate classification plan which result from its approval of the classification amendments." The circuit court then certified the three questions for review.

## II. ANALYSIS

### A. Statutory Right To Appeal

Since the resolution of the issues raised in the first and second certified questions is contingent upon the determination of the issue raised in the third certified question, namely, whether section 10(5) of the Personnel Code gives the DCLRs the right to appeal to the Commission, we will first address the third question.

Plaintiffs insist section 10(5) allowed them to appeal to the Commission concerning the revisions to the classification plan. Section 10(5) allows the Commission to "hear appeals of employees who do not accept the allocation of their positions under the position classification plan." 20 ILCS 415/10(5) (West 2002). The Commission argues a distinction lies between reallocation and reclassification, but plaintiffs assert the distinction has no practical difference when applied to the facts of this case.

We do not agree that section 10(5) provides for a Commission hearing to review a reclassification plan. While plaintiffs contend reallocation and reclassification are the same, the structure and language of the Personnel Code make it clear that there is a distinction.

■ "Allocation" occurs when an agency head reports to the Director "any significant changes in the duties" of a position and the Direc-

tor determines the proper allocation. 80 Ill. Adm. Code § 301.20 (Conway Greene CD-ROM March 2002). A person affected by a "reallocation" may request reconsideration of the decision and may appeal to the Commission after receiving the reconsideration decision. 80 Ill. Adm. Code § 301.30 (Conway Greene CD-ROM March 2002). Revisions to the "reclassification" plan, on the other hand, occur when the Director deems revisions are necessary to establish a "uniform position[-]classification plan for positions under the Personnel Code based on the similarity of duties and responsibilities assigned so that the same schedule of pay may be equitably applied to all positions in the same class, under the same or substantially the same employment conditions." 80 Ill. Adm. Code § 301.10 (Conway Greene CD-ROM March 2002). If because of a reclassification an employee is reallocated to a reduced rank or grade, the pay will not be lowered for a period of one year after the position reallocation. 80 Ill. Adm. Code § 301.10 (Conway Greene CD-ROM March 2002).

An employee is afforded a statutory right to appeal when that employee's position is reallocated, but section 10(5) does not extend such a right to an employee whose position is unchanged after a reclassification. Plaintiffs in this case will continue to perform the same duties at the same pay level, so their positions were not reallocated. Plaintiffs did lose wage parity and cross-bumping and bidding rights, but section 10(5) does not provide a remedy for this situation.

The Supreme Court of Illinois held that section 10(5) did not provide for a hearing for conservation workers who were laid off because the "structure of the Personnel Code clearly makes a distinction between layoffs and allocations." *Chestnut v. Lodge*, 34 Ill. 2d 567, 570, 216 N.E.2d 799, 801 (1966). Like the case of the layoffs, the Commission may approve or disapprove rules concerning reclassification, but the Personnel Code suggests an employee aggrieved by the plan does not have a right to a hearing before the Commission.

■ Plaintiffs contend the Commission has waived an argument that they did not have a right to appeal the reclassification since after plaintiffs appeared at the Commission hearing and voiced their objections, the Commission issued a report concerning the DCLRs. Plaintiffs argue the Commission's action of requesting a report shows the Commission acquiesced in plaintiffs' right to appeal the reclassification amendments. The mere fact, though, that the Commission requested a report so that it would be fully informed when it finally approved the reclassification does not create an appeal to the Commission. Section 10(5) clearly contemplates an appeal when an individual employee takes issue with his or her position being changed to either include new duties or reduce previous duties. Plaintiffs' duties and

pay remain the same. Because plaintiffs' position was not "reallocated," they have no right to appeal to the Commission under section 10(5).

### B. Administrative Review of the Classification Plan

Not only does section 10(5) of the Personnel Code not apply, but no administrative review is available for plaintiffs to contest the reclassification plan.

■ The Commission contends it was acting in a quasi-legislative manner when it approved the reclassifications, and quasi-legislative decisions are not subject to review under the Administrative Review Law (Review Law) (735 ILCS 5/3—101 through 3—113 (West 2002)). Plaintiffs argue the Commission's decision affected their individual rights and is, therefore, a quasi-judicial decision subject to review under the Review Law. Alternatively, plaintiffs argue that even if the Commission's action was quasi-legislative, such action is still subject to review under an arbitrary, capricious, or unreasonable standard rather than a manifest-weight-of-the-evidence standard.

There is " 'a recognized distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other.' " *Advanced Systems, Inc. v. Johnson*, 126 Ill. 2d 484, 506, 535 N.E.2d 797, 807 (1989), quoting *United States v. Florida East Coast Ry. Co.*, 410 U.S. 224, 245, 35 L. Ed. 2d 223, 239, 93 S. Ct. 810, 821 (1973). A quasi-judicial agency decision affects "a small number of persons on individual grounds based on a particular set of disputed facts that were adjudicated," while a quasi-legislative agency decision involves "general facts affecting everyone" in which no individual rights are at stake. *American Federation of State, County, & Municipal Employees v. Department of Central Management Services*, 288 Ill. App. 3d 701, 711, 681 N.E.2d 998, 1005 (1997) (hereinafter *AFSCME*), citing *Advanced Systems*, 126 Ill. 2d at 507, 535 N.E.2d at 807. Quasi-legislative hearings are information-gathering in nature. *AFSCME*, 288 Ill. App. 3d at 712, 681 N.E.2d at 1005. Quasi-judicial hearings involve the adversarial adjudication of an individual's rights. *AFSCME*, 288 Ill. App. 3d at 712, 681 N.E.2d at 1005.

In the instant case, the Commission's required approval of CMS's revisions to the classification plan was a quasi-legislative function. This case is similar to the *AFSCME* case in which a labor organization and individual state employees sought review of the Commission's approval of revisions to the classification plan that created one classification to replace 240 other classifications. The *AFSCME* court found

that the "nature of the hearing on the reclassification plan was similar to rule making" and the "view of [the] individuals presented at the hearing \*\*\* was allowed to provide information to the Commission." *AFSCME*, 288 Ill. App. 3d at 712, 681 N.E.2d at 1005.

Plaintiffs point out that in this case the Commission went further by requesting an investigation and report regarding the exclusion of the DCLRs. Further, instead of a union presenting the general objections of its members, three individual plaintiffs in this case voiced individual objections that essentially affected the entire class of DCLRs. These differences do not turn the reclassification hearing into a quasi-judicial hearing.

The hearing remained a fact-gathering hearing on the issue of general reclassification and did not adjudicate any individual rights despite the fact that three individuals objected to the revisions and could point to wage and seniority inequities that affected the entire class of DCLRs. The decision to reclassify positions is a technical decision requiring the expertise of the Director of CMS and the Commission to assure "similarity of duties performed, responsibilities assigned, and conditions of employment so that the same schedule of pay may be equitably applied to all positions in the same class." 20 ILCS 415/8a(1) (West 2002). No individual rights were adjudicated at the Commission's hearing; thus, the decision was a quasi-legislative decision.

The Commission contends quasi-legislative decisions such as this one are not subject to administrative review under the Review Law. See 735 ILCS 5/3—101 through 3—113 (West 2002). Since the Review Law does not apply, the Commission contends the reclassification decision is not subject to administrative review and the circuit court lacked jurisdiction to consider plaintiff's complaint.

Under section 11a of the Personnel Code, all of the Commission's "final administrative decisions" are subject to judicial review pursuant to the Review Law. 20 ILCS 415/11a (West 2002). The section goes on to limit the term "administrative decision" as defined in the Review Law. 20 ILCS 415/11a (West 2002). The Review Law defines an "administrative decision" as "any decision, order[,] or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties[,] or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3—101 (West 2002). The definition excludes "rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it" and "regulations concerning the internal management of the agency not affecting private rights or interests." 735 ILCS 5/3—101 (West 2002).

Based on the Review Law's definitions of "administrative decision," the Commission's approval of the reclassification is not an administrative decision subject to review under the Review Law. The Commission's approval of the reclassification is similar to rulemaking. Plaintiffs argue that because the Commission's Director sent a letter to plaintiff's counsel giving notice of the Commission's action and stating it was a final administrative order, the decision is subject to the Review Law. We disagree, as courts are not bound by an agency's erroneous construction of a statute. *Schober v. Young*, 322 Ill. App. 3d 996, 999, 751 N.E.2d 610, 612 (2001).

Plaintiffs further argue that even if we were to determine the Commission's action was quasi-legislative in nature, the action would still be subject to review under an arbitrary, capricious, or unreasonable standard. Plaintiffs point to the *AFSCME* case, in which the appellate court stated that "[w]hen reviewing administrative rules and regulations, *** a court may not invalidate the regulation unless it is clearly arbitrary, unreasonable[,] or capricious." *AFSCME*, 288 Ill. App. 3d at 713, 681 N.E.2d at 1006, citing *Shell Oil Co. v. Pollution Control Board*, 37 Ill. App. 3d 264, 270-71, 346 N.E.2d 212, 218 (1976). In determining the arbitrary standard applied, the *AFSCME* court relied on previous appellate decisions involving appeals under the Illinois Environmental Protection Act, which allows "[a]ny person adversely affected or threatened by any rule or regulation of [the Illinois Pollution Control] Board [to] obtain a determination of the validity or application of such rule or regulation by petition for review under [s]ection 41 of [the Illinois Environmental Protection Act]" (415 ILCS 5/29 (West 2002)). Therefore, the cases on which the *AFSCME* court relied were reviewed not under the Review Law but under a section of the Illinois Environmental Protection Act that provided for direct review of the regulations. The *AFSCME* court did not state that the Commission's reclassification decision is reviewable; it merely stated that it was a quasi-legislative action, and such actions, when reviewable, are reviewed under an arbitrary standard. Once the *AFSCME* court determined the Commission's decision was not subject to review under the writ of *certiorari*, the remaining determination that the decision was also not arbitrary was *dicta*, explaining that even if the court could review the decision, it would still stand as it was not arbitrary.

In *Chestnut*, the Supreme Court of Illinois stated "[s]ection 11a of the Personnel Code specifically makes all final administrative decisions of the [Commission] subject to the provisions of the Review Law, and therefore establishes the exclusive method of review in such cases." *Chestnut*, 34 Ill. 2d at 569, 216 N.E.2d at 801. Because the

Review Law does not afford a procedure for administrative review in this case, the circuit court's decision must be vacated.

## C. Standing

Because neither Commission review nor administrative review lies here, the question of whether plaintiffs have standing is irrelevant.

## III. CONCLUSION

For the foregoing reasons, we vacate the court's judgment.

Order vacated.

KNECHT, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent.

Under the facts of this case, the Commission's approval of the reclassification was a quasi-judicial decision subject to administrative review. The Commission's actions—which included investigating the DCLRs' claims, preparing a staff report, holding a hearing at which individual DCLRs voiced concerns, and issuing formal notice to plaintiffs' counsel—remove this from a quasi-legislative function to a quasi-judicial function adjudicating the DCLRs' rate of pay, cross-bidding, and bumping rights. Individual rights were clearly at stake here. See *AFSCME*, 288 Ill. App. 3d at 711, 681 N.E.2d at 1005.

Moreover, even if the functions were quasi-legislative, the reclassification was arbitrary and capricious because of the impact on the DCLRs. See *AFSCME*, 288 Ill. App. 3d at 713, 681 N.E.2d at 1006 (noting that when a decision is quasi-legislative, a court may not invalidate the regulation or administrative rule unless clearly arbitrary, unreasonable, or capricious). As such, this case is distinguishable from *AFSCME*, where no adverse affects were articulated:

> "Rather, we agree with the defendants that the plaintiffs have failed to articulate how application of the new pay grade adversely affects them, especially considering that all employees entered the [Public Service Administration] classification at the same salary they had prior to the change, all employees moved into a salary range with at least as great a maximum salary as their previous range, and that most employees realized an increased maximum range with the change. Based on the record, we cannot say that the reclassification was arbitrary or capricious." *AFSCME*, 288 Ill. App. 3d at 715, 681 N.E.2d at 1007.

Finally, contrary to the statement by the majority, the above quote indicates the appellate court in *AFSCME* did review the classification.

As such, the *AFSCME* court's determination that the reclassification was not arbitrary or capricious was not merely *dicta*.